# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

AERO TECH AVIATION DESIGN, LLC,
and THOMAS MILLER,

       *Plaintiffs,*

vs.

       Case No. 15-1373-EFM-TJJ

OTTO AVIATION GROUP, LLC,

       *Defendant.*

## MEMORANDUM AND ORDER

*Yet you, my creator, detest and spurn me, thy creature, to whom thou art bound . . . .*[1]

Is a party legally bound by a contract it created, signed and obtained agreement to by the other party, or is it permitted to argue that an earlier form of the agreement is instead the governing obligation? Thomas Miller, on behalf of his company Aero Tech Aviation Design, LLC, drafted a proposed agreement to provide engineering services to Otto Aviation Group, LLC. He then signed that proposed agreement and sent it to Otto Aviation, who accepted it on May 14, 2013. Although initially prosperous, the relationship between Aero Tech and Otto Aviation ultimately deteriorated. Aero Tech eventually sued, alleging breach of contract and breach of the implied duty of good faith and fair dealing. But Aero Tech does not allege breach of the May 14 contract that it had drafted; rather, it ignores the latest contract and alleges breach

---

[1] Mary Shelley, *Frankenstein* 68 (3d ed. 1831)

of an earlier agreement. For various reasons, Aero Tech argues that it should not be bound by the May 14 contract that it created.

Miller, in his individual capacity, also brings a claim against Otto Aviation under a theory of promissory estoppel. Otto Aviation now moves for summary judgment, seeking enforcement of the May 14 contract and dismissal of all of Aero Tech's claims (Doc. 73). Having reviewed the record, the Court concludes that the parties are bound by the May 14 contract, and therefore dismisses Aero Tech's claims arising from the earlier agreement. But because the May 14 contract does not supplant the earlier agreement that may have existed between Otto Aviation and Miller in his individual capacity, the Court will not dismiss his promissory estoppel claim on those grounds.

## I.    Factual and Procedural Background[2]

In early 2013, Plaintiff Thomas Miller served as Manager of Engineering Services for Cessna in Wichita. At the same time, Thomas Miller and his wife Leslie Miller owned and operated Plaintiff Aero Tech Aviation Design, LLC. Aero Tech is an engineering and design firm that markets itself as an aerospace engineering consulting company.

Charles Lee—program leader for Defendant Otto Aviation Group, LLC—contacted the Millers on February 20, 2013. Otto Aviation is a small aviation company in Southern California that was working to develop a prototype business aircraft called the Celera 500L. In the February 20 email, Lee explained that Otto Aviation was interested in sourcing some work "to a small design house" like Aero Tech. Aero Tech signed a non-disclosure agreement in March 2013 in order to further discussions with Otto Aviation. Discussions ensued, culminating in a

---

[2] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

purchase order dated April 15, 2013. The purchase order provided that Aero Tech would provide designs for an engine mount and fuel system. Otto Aviation was to pay Aero Tech $85 per hour for a maximum of 160 hours of work.

While completing the work set out in the purchase order, Miller continued to have conversations with Lee about additional work on the Celera 500L project.[3] In those conversations, Lee indicated that Otto Aviation would require the work of one to two engineers. Additionally, Lee represented that Miller would have to leave his job at Cessna in order to do the amount of work required by Otto Aviation. Although Miller was hesitant, Lee represented that if Miller left Cessna, Otto Aviation would employ Aero Tech throughout the completion of the Celera 500L project. Miller estimated that the project would take three to five years.

On May 9, 2013, Miller spoke on the phone with Karen Kurtz of Otto Aviation. They discussed the potential for an agreement between Aero Tech and Otto Aviation that would supersede the April 15 purchase order. Shortly thereafter, Miller had a phone conversation with Lee. Lee again represented that Otto Aviation would require substantial work from Aero Tech, the scope of which would require Miller to leave Cessna and focus his energy entirely on Aero Tech. Once more, Miller was led to believe that Otto Aviation would require Aero Tech's

---

[3] Otto Aviation attempts to controvert Miller's assertion that these conversations occurred, but fails to cite to specific facts that actually controvert the claim. Otto Aviation states that Miller's assertion "lacks any factual record evidence beyond Mr. Miller's self-serving, after-the-fact affidavit, and is therefore controverted." In short, Otto Aviation seeks to controvert Miller's affidavit on credibility grounds, which is improper at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or a directed verdict."); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2725.2, 440 (4th ed. 2016) ("[A] party moving for summary judgment is not entitled to a judgment merely because the facts the party offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.").

support throughout the flight test of the Celera 500L and the obtaining of a Federal Aviation Administration certificate.

The following day, on May 10, Miller emailed a "consulting services proposal" to Bill Otto Jr., Otto Aviation's chief financial officer.  The proposal contemplated that Aero Tech would provide (1) group lead and propulsion system engineering services for design and installation, (2) group lead and mechanical system engineering services in the area of flight controls design and installation, and (3) additional mechanical system engineering services as required.  The six-page proposal outlined Otto Aviation's efforts to develop the Celera 500L, and the performance objectives.  The performance objectives section stated that Aero Tech would provide engineering services to support the development of the Celera 500L, and listed the specific services that the parties expected Aero Tech to provide.  The proposal contemplated the subsequent execution of a written contract, noting that "the resource support level is expected to be between 1.5-2.0 heads from the point of acceptance of a contract based on this proposal, through flight testing of the prototype aircraft."

The proposal also contained a section titled "Price Proposal."  That section stated that "[t]he rate to Otto Aviation for all of the labor and items proposed in the proceeding pages is $100.00 per hour."  The proposal did not forecast how many hours the Millers expected to devote to the project.  And the proposal concluded by stating that "[f]ull time work may begin 2 weeks after contract signing."  Absent from the proposal was language regarding either party's right to terminate their arrangement.  The proposal was signed by Miller, but did not contain a signature line for anybody from Otto Aviation.

On May 12, Otto Jr. sent Miller an email stating that Otto Aviation accepted his proposal. Miller responded, writing that "[n]ormally we draw up a contract to capture the proposal.  Would

you like us to put that together and get it you?" Otto Jr. responded "yes please." That same day, Miller downloaded a contract form off of the internet and inputted terms relevant to the relationship between Aero Tech and Otto Aviation. Miller then sent Otto Jr. an email that read:

> Please see the attached agreement, which is based on the proposal accepted yesterday. If you have any changes prior to accepting the agreement please let me know we will get it taken care of as quickly as possible.

The attached document was titled "Otto Aviation, Inc – ATAD, LLC Consulting Agreement." The four-page document described the services that Aero Tech would provide and the manner in which they would be performed. Comparable to the earlier proposal, the proposed agreement stated that Aero Tech would provide (1) group lead and propulsion system engineering, and (2) flight controls group lead and mechanical systems flight controls engineering. Under the proposed agreement, Otto Aviation would pay Thomas Miller $100 per hour and Leslie Miller $85 per hour. Aero Tech was to submit Otto Aviation a monthly invoice, and Otto Aviation was to pay Aero Tech within 30 days of that invoice. The proposed agreement stated that Aero Tech would determine the manner in which services would be performed, but expected that Thomas Miller would work about 200 hours per month, and Leslie Miller would work about 80 hours per month. Unlike the earlier proposal, the proposed agreement did not state that Otto Aviation would employ Aero Tech through flight testing of the prototype. Rather, it provided that the agreement "may be terminated by either party upon 90 days written notice to the other party."

Furthermore, towards the end of the proposed agreement, a section titled "Entire Agreement" read:

> This Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This agreement supersedes any prior written or oral agreements between the parties.

At the bottom of the proposed agreement were two signature lines: one for Otto Aviation, Inc., and one for Miller. Miller signed the attached document that he had drafted and emailed it to Otto Jr.

Otto Jr. did not immediately respond to Miller's proposal, so Miller sent a follow-up email a few hours later. In that follow-up, Miller asked Otto Jr. to please sign and scan the agreement to that they could "wrap this part up" and the team could "get going." Otto Jr. responded, commenting that Miller's proposal seemed "pretty straightforward" but asserting that termination of the agreement should only require 30 days written notice. Otto Jr. also asked for a modification of the proposed terms regarding confidentiality.

The next morning, May 14, Miller sent Otto Jr. a revised proposed agreement. The revised agreement was almost identical to the original, but it provided that either party could terminate the agreement upon 60 days—instead of 90 days—written notice. The revised proposal still contained a description of the services, how they would be performed, and rates of payment. And the revised proposal still contained the "Entire Agreement" paragraph.

As with his first proposal, Miller signed the revised proposal. Otto Jr. responded the same day stating, "[p]lease use this email as my acceptance of the attached contract. I will have a signed copy scanned and forward as soon as possible." But neither Otto Jr. nor any representative of Otto Aviation ever signed the revised proposal. Aero Tech then started performing services for Otto Aviation.

Aero Tech sent Otto Aviation a monthly invoice from May 2013 until March 2014. Each of those invoices reflected a rate of $100 per hour for Thomas Miller and $85 per hour for Leslie Miller. Otto Aviation asserts that Aero Tech's work from May to October 2013 was in line with its expectations. From May 2013 through mid-January 2014, Aero Tech billed Otto Aviation

$312,237.50 for consulting services—about $39,029 per month. In that time frame, Thomas Miller billed as many as 292 to as few as 131.5 hours per month. He averaged about 220 hours per month during that period. Leslie Miller billed as many as 318.5 and as few as 67 hours per month during the same period, averaging about 200 hours per month.

Sometime in 2013, Steven Forness replaced Charles Lee at Otto Aviation as the program leader for the Celera 500L project. In November 2013, Forness chided Miller for failing to copy him on work emails. Forness felt that Miller was trying to go around him, while Miller maintains that it was merely an oversight. Miller responded forcefully to Forness's admonition, expressing his disappointment in what he considered a "malcontented email." In that response, Miller wrote

> I will simply need to direct Bill [Otto] Jr. to our signed contract which clearly states the manner in which we perform our task(s) is our discretion. i.e. we will communicate as we see fit to accomplish the tasks we have already been asked to accomplish.

Around January 2, 2014, Forness met with Bill Otto Jr. and Bill Otto Sr. about Otto Aviation's relationship with Aero Tech. Either during or shortly after that meeting, Otto Aviation decided to change course. Otto Sr. claims that a decision was made to "let [Aero Tech] go." At the very least, the parties decided that Aero Tech's role would be reduced.

On January 14, Forness sent out an email detailing Otto Aviation's plan to reorganize the area of responsibility assigned to its various contractors. The new plan reduced Aero Tech's role in the Celera 500L project. From January 19 through February 16, Aero Tech billed Otto Aviation $16,572.50 for 180.5 hours of consulting. Thomas Miller worked 82 hours and Leslie Miller worked 98.5. From February 17 through March 24, Aero Tech only worked 8.5 hours for

Otto Aviation. That invoice—for $775—was the last one that Aero Tech sent to Otto Aviation. Shortly thereafter, Aero Tech stopped doing work for Otto Aviation.

On April 2, 2014, Aero Tech, through counsel, informed Otto Aviation that Aero Tech considered Otto Aviation in breach of contract. And so Aero Tech asserted that "the subject contract" was terminated as a consequence of Otto Aviation's breach. The letter asserted that the consulting proposal, accepted by Otto Jr. on May 12, was the contract governing the parties' relationship. The letter made no mention of the later contract that Miller drafted and signed, and Otto Jr. accepted.

Aero Tech now brings this action against Otto Aviation, alleging breach of contract and breach of the implied duty of good faith and fair dealing. Aero Tech claims that Otto Aviation breached the May 12 proposal by refusing to assign it projects or work in support of the Celera 500L project. Aero Tech also alleged that Otto Aviation breached the implied duty of good faith and fair dealing by removing Aero Tech from Celera 500L projects without just cause. In addition, Miller, individually, contends that he is entitled to recover from Otto Aviation under a theory of promissory estoppel. Otto Aviation now moves for summary judgment on all three counts.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the

---

[4] Fed. R. Civ. P. 56(a).

proffered evidenced permits a reasonable jury to decide the issue in either party's favor.[5]  The

moving party bears the initial burden of proof, and must show the lack of evidence on an

essential element of the claim.[6]  If the moving party carries this initial burden, the non-moving

party that bears the burden of persuasion at trial may not simply rest on its pleading but must

instead "set forth specific facts" from which a rational trier of fact could find for the non-moving

party.[7]  These facts must be clearly identified through affidavits, deposition transcripts, or

incorporated exhibits—conclusory allegations alone cannot survive a motion for summary

judgment.[8]  To survive summary judgment, the non-moving party's evidence must be

admissible.[9]  The Court views all evidence and reasonable inferences in the light most favorable

to the party opposing summary judgment.[10]

### III.     Analysis

### A.     The May 14 contract governs the parties' relationship.

Aero Tech asserts that the consulting services proposal, accepted by Otto Jr. on May 12,

governs its relationship with Otto Aviation.  And Aero Tech argues that Otto Aviation breached

the May 12 proposal.  Otto Aviation, on the other hand, asserts that the May 12 proposal is

merely an unenforceable agreement to agree in the future.  Instead, Otto Aviation contends that

the parties' relationship is governed by the May 14 contract that Miller drafted and signed, and

---

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322-23 (1986)).

[7] *Id.* (citing Fed. R. Civ. P. 56(e)).

[8] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th. Cir. 1998)).

[9] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[10] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

Otto Jr. accepted via email. Otto Aviation contends that it complied with the terms of the May 14 contract.

At its core, this case turns on the issue of which document governs the parties' relationship. For this reason, Aero Tech argues that summary judgment is inherently improper. Aero Tech states that "because, in essence, both parties argue that an entirely different contract controls these proceedings, there is significant ambiguity regarding the intent of the parties." Accordingly, Aero Tech contends that the dispute should be put before a jury. The Court disagrees.

The issue here is whether the parties formed a contract on May 12, May 14, neither, or both. To that end, the question is if and when the parties intended to form a contract. "Whether a binding contract was entered into depends on the intention of the parties and is a question of fact."[11] And so when the evidence is conflicting or permits more than one inference, the existence of a contract is a question for a jury.[12] But where the facts surrounding a potential contract are undisputed, its validity is a question of law for the Court.[13] Here, the relevant facts surrounding the formation of both asserted contracts are undisputed. Therefore, the Court may look at the undisputed facts to determine whether the parties intended to be bound by either document. Having reviewed the facts, the Court concludes that the parties intended to be bound by the May 14 contract. Consequently, even assuming that the May 12 proposal was an enforceable agreement, it was supplanted by the May 14 contract under the doctrine of substituted contract.

---

[11] *Sw. & Assocs., Inc. v. Steven Enters., LLC*, 32 Kan. App. 2d 778, 88 P.3d 1246, 1249 (2004).

[12] *Nungesser v. Bryant*, 283 Kan. 550, 153 P.3d 1277, 1288 (2007).

[13] *Id.*

Kansas law recognizes the doctrine of substituted contract, which is set forth in the Restatement (Second) of Contracts § 279.[14]  A substituted contract "is a contract that is itself accepted by the obligee in satisfaction of the obligor's existing duty."[15]  "The substituted contract discharges the original duty."[16]  In a comment, the Restatement states that "[a] common type of substituted contract is one that contains a term that is inconsistent with a term of an earlier contract between the parties."[17]  Further, the Restatement gives the following illustration of a substituted contract:

> A and B make a contract under which A promises to build on a designated spot a building, for which B promises to pay $100,000.  Later, before the contract is performed, A and B make a new contract under which A is to build on the same spot a different building, for which B is to pay $200,000.  The new contract is a substituted contract and the duties of A and B under the original contract are discharged.[18]

Although the parties do not address this doctrine in their briefs, it clearly applies to the instant facts.  Under the initial contract, Aero Tech promised to work on the Celera 500L throughout flight testing, and Otto Aviation promised to pay Aero Tech $100 per hour for that work.  Later, before that contract was performed, Aero Tech and Otto Aviation made a new contract under which Aero Tech was to work on the same project—subject to some different terms and which either party could terminate with sufficient notice—and Otto Aviation agreed to pay $100 per hour for Thomas Miller's work and $85 per hour for Leslie Miller's work.  Compared to the

---

[14] *Barbara Oil Co. v. Kan. Gas Supply Corp.*, 250 Kan. 438, 827, P.2d 24, 36 (1992) (citing Restatement (Second) of Contracts § 279).

[15] Restatement (Second) of Contracts § 279(1).

[16] Restatement (Second) of Contracts § 279(2).

[17] Restatement (Second) of Contracts § 279, cmt. a.

[18] Restatement (Second) of Contracts § 279 cmt. a, illus. 2.

Restatement's comment and illustration, the instant facts are a textbook example of a substituted contract. Thus, the Court will apply that doctrine to the instant facts.

"The existence of a substituted contract is question of law for the court in cases in which a written agreement is involved."[19]  A substituted contract exists if each of the following elements are satisfied: (1) a previous valid contract; (2) agreement on a new contract; (3) validity of that new contract; and (4) intent to extinguish the old contract and substitute the new.[20]  The Court will assume, without deciding, that the first element is satisfied and Aero Tech is correct that the May 12 proposal was an enforceable contract and not merely an agreement to agree in the future.[21]

The second element concerns whether the parties reached a new agreement.  Again, when the facts surrounding the parties' intent to enter a contract are undisputed, the existence of that contract is a question of law for the Court.[22]  Here, the relevant facts related to the May 14 contract are undisputed and the Court can determine whether it constitutes a new agreement.  An agreement is binding "when the parties mean it to be so."[23]  "In determining intent to form a contract, the test is objective, rather than subjective."[24]  In other words, the Court will not

---

[19] *Comeau v. Mt. Carmel Med. Ctr., Inc.*, 869 F. Supp. 858, 862 (D. Kan. 1994) (citing *Barbara Oil*, 827 P.2d at 36).

[20] *Barbara Oil*, 27 P.2d at 36.

[21] *See Phillips & Easton Supply Co. v. Eleanor Int'l, Inc.*, 212 Kan. 730, 512 P.2d 379, 383 (1973) ("Generally, an agreement to make a contract in the future is not binding."); *but see id.* at 384 (noting that parties often do business informally, and an informal document may be a binding agreement even if it contemplates the subsequent execution of a formal instrument).

[22] *See Nungesser*, 153 P.3d at 1288; *Sw. & Assocs.*, 88 P.3d at 1249.

[23] *Phillips & Easton*, 512 P.2d at 384.

[24] *Sw. & Assocs.*, 88 P.3d at 1249.

concern itself with the parties' subjective beliefs; rather, the Court will focus on whether their outward expressions of assent are sufficient to form a binding contract.[25]

Here, the parties' outward expressions demonstrate that they intended to create a new agreement with the May 14 contract. The parties conferred as to the termination period and matters related to confidentiality. Miller drafted, signed, and emailed the contract to Otto Jr., who replied, stating "[p]lease use this email as my acceptance of the attached contract. I will have a signed copy scanned and forward as soon as possible." And although Otto Jr. never followed through by signing the document, Kansas law recognizes that a contract can be accepted without a signature.[26] Otto Jr.'s expression of assent was quite clear.

Additionally, the parties' conduct after May 14 demonstrates that the parties intended to be bound by the later document.[27] Miller expressed reluctance to begin work until Otto Jr. accepted the second agreement, asking Otto Jr. to sign the document so that they could "wrap this part up" and the team could "get going." After Otto Jr. accepted via email, Aero Tech began working for Otto Aviation. Aero Tech billed Otto Aviation at a rate of $100 per hour for work done by Miller and $85 per hour for work done by Leslie. Those terms reflect the May 14 contract, and not the May 12 proposal, which called for a rate of $100 per hour for all work. In return for the services, Otto Aviation paid Aero Tech in full. Further, in an email to Steve Forness, Miller referred to "our signed contract which clearly states the manner in which we perform our task(s) is our discretion." The language in that email mirrors the second paragraph

---

[25] *Id.* (citing 1 Lord, Williston on Contracts § 4.1, p. 241 (4th ed. 1990)).

[26] *Lindsey Masonry Co. v. Murray & Sons Constr. Co.*, 390 P.3d 56, 72 (2017) ("A party accepts an offer through an objective manifestation of assent or agreement to the offer.").

[27] *King v. Wenger*, 219 Kan. 668, 549 P.2d 986, 990 (1976) ("The subsequent conduct and interpretation of the parties themselves may be decisive in the question of whether a contract has been made.").

of the May 14 contract, which reads "[t]he manner in which the Services are to be performed and the specific hours to be worked by [Aero Tech] shall be determined by [Aero Tech]." No such language appears in the May 12 proposal.

It is clear that the parties intended to agree to the May 14 document. Both their outward expressions of assent and their subsequent conduct demonstrate the intent to form a contract, notwithstanding the fact that Otto Jr. failed to sign the document.

> A written contract, not required to be in writing, is valid if one of the parties signs it and the other acquiesces therein. Acceptance of a contract by assenting to its terms, holding it and acting upon it, may be equivalent to a formal execution by one who did not sign it.[28]

Because the parties intended to be bound, the Court finds that the second element is satisfied: the parties agreed to a new contract.

The Court now turns to the third element: whether the new contract is valid. Aero Tech contends that the May 14 contract is invalid because it was not supported by adequate consideration. Every contract must be supported by consideration to be enforceable.[29] This requirement applies to substitute contracts as well.[30] Consideration is defined as "any benefit, profit or advantage flowing to the promisor which he would not have received but for the contract, or any loss or detriment to the promisee."[31]

Aero Tech argues that subsequent agreements must have "fresh and independent" consideration, and that the May 14 contract was not accompanied by such additional

---

[28] *Hartford Fire Ins. Co. v. P & H Cattle Co.*, 451 F. Supp. 2d 1262, 1273 (D. Kan. 2006) (applying Kansas law).

[29] *Dugan v. First Nat'l Bank*, 227 Kan. 201, 606 P.2d 1009, 1017 (1980).

[30] Restatement (Second) of Contracts § 279, cmt. b ("[a substituted contract] is not effective unless it is supported by consideration or some substitute for consideration.").

[31] *Temmen v. Kent-Brown Chevrolet Co.*, 217 Kan. 223, 535 P.2d 873, 880 (1975).

consideration.[32]  While this statement of law is correct, Aero Tech's argument is not.  The May 12 proposal was supported by consideration: it provided that Aero Tech would provide services for Otto Aviation in exchange for payment at a rate of $100 per hour.  Similarly, the May 14 contract was supported by fresh and independent consideration: it provided that Aero Tech would provide services—with slightly modified terms—for Otto Aviation in exchange for payment at a rate of $100 per hour for Thomas Miller and $85 per hour for Leslie Miller.

A promise is not supported by consideration if "the promise is given by one party to another without anything being bargained for and given in exchange for it."[33]  That is not the case here.  In the May 14 contract, Aero Tech promised to provide services for Otto Aviation, and in exchange, Otto Aviation agreed to pay Aero Tech.  Given the plain language in the May 14 contract, it cannot seriously be argued that the agreement was not supported by consideration.  Because the May 14 contract was supported by consideration, it is a valid, enforceable agreement.

The fourth and final element is whether the parties expressed the intent to extinguish the old contract and substitute the new.  Once again, the Court is tasked with ascertaining that parties' intent.  And where the terms of a contract are clear, "the intent of the parties is to be determined from the language of the contract."[34]  Here, the May 14 contract contained a section titled "Entire Agreement" that read:

> This Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written.  *This*

---

[32] *Hummel v. Wichita Fed. Sav. & Loan Ass'n*, 190 Kan. 43, 372 P.2d 67, 70 (1962).

[33] *Varney Bus. Servs., Inc. v. Pottroff*, 275 Kan 20, 59 P.3d 1003, 1014 (2002).

[34] *Osterhaus v. Toth*, 291 Kan. 759, 249 P.3d 888, 896 (2011).

*agreement supersedes any prior written or oral agreements between the parties* (emphasis added).

The language could not be clearer.  In that paragraph, which was drafted by Miller, the parties expressed their intent to extinguish the old contract and substitute the new.  By the parties' own language, the May 14 contract superseded any prior written agreement—including the May 12 proposal.  Because the May 14 contract included a comprehensive merger clause, the Court finds that the parties intended to substitute the May 14 contract for the May 12 proposal.[35]

All four elements of the substituted contract doctrine are satisfied.  Hence, even assuming that the May 12 proposal was an enforceable agreement, the Court finds that it was supplanted by the May 14 contract.  Because the May 14 contract is a substituted contract, whatever duties that the parties owed under the May 12 proposal are discharged.[36]  Having determined that the May 14 contract governs the parties' relationship, the Court turns to Aero Tech's and Miller's claims.

## B.    The May 14 contract eliminates Aero Tech's causes of action that arise from the May 12 proposal.

### 1.    *Breach of Contract*

Aero Tech alleges that by its conduct, Otto Aviation breached the May 12 proposal.  As noted above, the May 12 proposal was supplanted by the May 14 contract, and any duties that Otto Aviation had under the earlier agreement have been discharged.  Consequently, Otto

---

[35] *See Comeau*, 869 F. Supp. at 863 (noting that a merger clause "expresses the intent of the parties to substitute the written contract for any previously existing contract created.").

[36] Restatement (Second) of Contracts § 279(2).

-16-

Aviation cannot be held liable for breaching a contract under which it owed no duties.[37]  Aero Tech's breach of contract claim is therefore dismissed.

### 2.  Breach of the Implied Duty of Good Faith and Fair Dealing

Aero Tech also alleges that Otto Aviation breached the implied duty of good faith and fair dealing.  The implied duty is derivative in nature, meaning that it does not create new contract terms but grows out of existing ones.[38]  The duty of good faith and fair dealing only amplifies duties and rights already existing under the terms of the agreement.[39]  The goal of the implied duty is to accomplish the parties' express promises, so a breach is actionable when it relates to an aspect of performance under the terms of the contract.[40]

Aero Tech does not spell out which specific term of the contract this claim arises from. But in its Complaint, and in every filing since, Aero Tech has asserted that the May 12 proposal governs the parties' relationship.  Obviously, then, the duty of good faith and fair dealing asserted by Aero Tech must have been implied in the May 12, and not the May 14, document. Because the May 12 proposal was supplanted by the May 14 contract, Otto Aviation cannot be held liable for breaching duties that were allegedly implied by the earlier proposal.  Thus, Aero Tech's claim for breach of the implied duty of good faith and fair dealing is dismissed.

---

[37] Aero Tech claims that under the May 12 proposal, it had a contractual right to perform work on the Celera 500L project. Presumably, that right arises from the provision mandating that Aero Tech would work on the Celera 500L through flight testing of the prototype.  That provision does not appear in the May 14 contract. However, the Court is not convinced that this is legally significant, because regardless of the specific provision that was allegedly breached, Aero Tech has always alleged a breach of that May 12, and not the May 14, document.

[38] *Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1179 (D. Kan. 1990); *see also Bonanza, Inc. v. McLean*, 242 Kan. 209, 222, 747 P.2d 792, 801 (1987) ("[E]ssential terms of a contract on which the minds of the parties have not met cannot be supplied by the implication of good faith and fair dealing.").

[39] *Pizza Mgmt.*, 737 F. Supp. at 1184.

[40] *Id.* at 1179.

## C.     The May 14 contract between Aero Tech and Otto Aviation does not supplant Miller's promissory estoppel claim.

Miller brings an alternative claim against Otto Aviation under the doctrine of promissory estoppel.  "Promissory estoppel is a doctrine by which courts view performance in reasonable reliance on a promise as sufficient to create a legally binding contract where a contract otherwise lacks consideration."[41]  "The party assuming the obligation or detriment may bring an action for relief should the party making the representation or promise fail to follow through."[42]

In his promissory estoppel argument, Miller claims that he relied on Charles Lee's representations that if Miller left his job at Cessna, Otto Aviation would provide work to Aero Tech throughout the completion of the Celera 500L project.  In this claim, the contract asserted by Miller is one in which Otto Aviation—through Lee—promised that it would supply steady work to Aero Tech, and in reliance on that promise, Miller left his job to his detriment.

As with Aero Tech's other claims, Otto Aviation argues that Miller's promissory estoppel claim is superseded by the May 14 contract.  Specifically, Otto Aviation points to the merger clause contained in the May 14 contract, which states that "[t]his agreement supersedes any prior written or oral agreements between the parties."  But in making this argument, Otto Aviation overlooks a critical point: Miller, individually, was not a party to the May 14 contract—he signed on behalf of Aero Tech.  And so the "between the parties" language in the merger clause does not apply to him; it applies only to the parties to the contract: Otto Aviation and Aero Tech. Aero Tech's claims arising under the May 12 proposal fail because the May 14 contract, between the same parties for essentially the same work, was a substitute contract.

---

[41] *Comeau*, 869 F. Supp. at 863.

[42] *Bouton v. Byers*, 50 Kan. App. 2d 35, 321 P.3d 780, 787 (2014).

In this claim there are also two asserted contracts. However, the first contract—based on promissory estoppel—is between Miller and Otto Aviation, in which Otto Aviation promised to supply work to Aero Tech if Miller would leave his job. In other words, Miller gave up steady employment with Cessna in reliance on the promise of steady employment with Aero Tech. Conversely, the second contract is between Aero Tech and Otto Aviation, in which Otto Aviation promised to pay Aero Tech for engineering services. Unlike the other claims, Miller's promissory estoppel claim is not subsumed by the May 14 contract. The two agreements involve different parties, and the promises contained therein are too dissimilar.

Without considering the merits of the promissory estoppel claim, the Court denies Otto Aviation's motion for summary judgment on the grounds that the claim is eliminated by the existence of the May 14 contract.

## D. The Court will not consider the issue of whether Otto Aviation complied with the May 14 contract.

Beyond arguing that the May 12 proposal was supplanted by the May 14 contract, Otto Aviation also "respectfully requests that the Court issue an order declaring that Otto was not in breach of the May 14 Contract based on the uncontroverted facts and dismissing Plaintiffs' breach of contract claim." Although the Court agrees that the May 14 contract controls these proceedings, the Court will not go as far as to declare that Otto Aviation was not in breach.

Otto Aviation is not currently, nor ever has been, facing an allegation that it breached the May 14 contract.[43] The Court has already dismissed Aero Tech's claim that Otto Aviation breached the May 12 proposal, and Aero Tech's theory of recovery has always been to

---

[43] Otto Aviation did file a counterclaim alleging that Aero Tech breached the May 14 agreement, but that counterclaim is not at issue in this motion.

completely deny the validity of the May 14 contract. For the reason, it would be inappropriate for the Court to declare that Otto Aviation did not breach the May 14 contract where Aero Tech is not making such a claim. "[S]eeking to litigate this ostensible controversy now over unfiled, potential . . . claims is 'the very sort of speculative, hypothetical factual scenario that would render such a [declaratory] judgment a prohibited advisory opinion.' "[44] Accordingly, the Court will not entertain such a claim at this time.

## IV.    Conclusion

In brief, this case is about a drafter of a contract who later decided he did not want be bound by his creation. Whatever promises were made between Otto Aviation and Aero Tech from May 9 through 13 have no bearing here; they were all supplanted when the parties executed a new contract, for new consideration, with a full integration clause. The May 14 contract is unambiguous, and the parties clearly intended that it be binding. Consequently, the superseding May 14 contract eliminates any causes of action that Aero Tech may have had under the May 12 proposal.

However, any contract that may have arisen under the doctrine of promissory estoppel between Otto Aviation and Miller was not supplanted by the May 14 contract, and therefore, Otto Aviation is not entitled to summary judgment on those grounds.

---

[44] *Schell v. OXY USA, Inc.*, 814 F.3d 1107, 1115 (10th Cir. 2016) (citing *Jordan v. Sosa*, 654 F.3d 1012, 1026 (10th Cir. 2011)).

**IT IS THEREFORE ORDERED** that Otto Aviation's Motion for Summary Judgment (Doc. 73) is **GRANTED IN PART AND DENIED IN PART.** Counts I and II of Aero Tech's Complaint are **DISMISSED**.

**IT IS SO ORDERED**.

Dated this 18th day of April, 2017.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE